J-S04011-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
KEVIN PATTERSON :
:
Appellant : No. 1153 EDA 2021

Appeal from the PCRA Order Entered May 17, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-1301910-2006

BEFORE: BENDER, P.J.E., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.: **FILED FEBRUARY 18, 2022**

Appellant, Kevin Patterson, appeals *pro se* from the post-conviction court's May 17, 2021 order denying, as untimely, his petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. Herein, Appellant alleges that he has satisfied the newly-discovered fact exception to the PCRA's one-year time-bar, thus entitling him to an evidentiary hearing and/or a new trial. After careful review, we affirm.

This Court previously summarized the facts of Appellant's case, as follows:

> On September 6, 2006, Appellant's co-defendant, Kelly Seddon, was working as a prostitute for Appellant. At about 1:30 a.m.[,] Ms. Seddon came into contact with the victim[,] who was coming out of a bar near the intersection of Howard and Norris Streets in Philadelphia. Prior to seeing the victim, Appellant had told Ms. Seddon that he needed $50 to pay a drug debt. Upon seeing the

_____

[*] Former Justice specially assigned to the Superior Court.

victim, Ms. Seddon twice propositioned him for a "date." Both times the victim responded [by] saying[,] "I don't date."

Ms. Seddon then saw Appellant[,] who told her that the victim looked like a good target to be robbed. Appellant and Ms. Seddon followed the victim to Howard Street where Appellant came upon the victim and violently threw him against a wall, causing the victim to strike his head. The victim fell face first to the ground. While the victim was on the ground, Appellant and Ms. Seddon went through the victim's pockets and wallet, taking money and his watch.

Appellant and Ms. Seddon then went to nearby steps where they sat and smoked crack. After Appellant and Ms. Seddon separated, Ms. Seddon feared for the victim's safety enough that she went around the corner to a pay phone at Front and Susquehanna Streets and called 911.

Police Officer Michael Cappo responded to the radio call and found the victim lying face down on the sidewalk. He was still alive, but blood was coming out of the back of his head. His breathing was shallow and he was making gurgling noises. Officer Cappo stayed with the victim until rescue came. The officer then followed rescue to the hospital and remained there until the victim was pronounced dead less than an hour later.

Police Sergeant James Boone also responded to the radio call. After observing the scene, he obtained information as to the source of the 911 call and went to the pay phone. Less than a minute after he arrived, Ms. Seddon came from around the corner and asked if the man was okay. Sergeant Boone then had her transported to the detectives to give a statement.

In her 911 call[,] and in her police interview taken by Detective Henry Glenn shortly after the incident, Ms. Seddon said that the killing was committed by two Hispanic males. She also identified a photograph of an African-American male. However, Detective Glenn later determined that the male identified by Ms. Seddon could not have been involved in the crime, as he was in custody at the time. On June 16, 2006, Ms. Seddon was brought back for a second interview. In that interview she told a slightly different version, implicating Appellant with the Hispanic males. She identified Appellant's photograph and said that she knew him as "Donald."

As a result of that statement, the police brought Appellant and Ms.

- 2 -

Seddon in for further questioning. They were in separate rooms and initially neither knew that the other was there. After being made aware that Ms. Seddon was in another room and after receiving his ***Miranda*** warnings, Appellant gave a statement to Detective Glenn. In that statement, Appellant admitted to being with Ms. Seddon; to following the victim; to pushing him to the ground; and to sharing the proceeds of the robbery. Appellant further stated that the idea to rob the victim was Ms. Seddon's[,] and that it was Ms. Seddon who went into the victim's pockets and took $150 and a watch. Appellant stated that they used the money to purchase drugs[,] which they split.

***Commonwealth v. Patterson***, No. 2205 EDA 2008, unpublished

memorandum at 1-4 (Pa. Super. filed Oct. 19, 2010).

After Appellant provided his inculpatory statement to Detective Glenn,

Ms. Seddon was questioned by Detective Glenn and Detective James Pitts. As

the Commonwealth explains,

[Ms. Seddon] admitted that portions of both of her earlier statements were lies. According to [Ms.] Seddon's third statement, she and "Donald" were getting high outside near the bar when the[y] saw the victim walking down the street. "Donald" identified the victim as a "good target" and said, "[L]et's get this guy." He approached the victim, threw him against the wall, and hit him in the face. The victim briefly fought back, and "Donald" pushed him against the wall again. "Donald" returned to [Ms.] Seddon, and they did another hit of crack-cocaine. [Ms.] Seddon then saw the victim fall onto the sidewalk. She and "Donald" returned to the fallen victim and began looking through his pockets. [Ms.] Seddon took the victim's wallet, found it to be empty, and put it back. "Donald" took a dollar from the victim's pocket and a watch from his wrist. As the victim lay on the ground moaning, they left to get high again in a nearby park. [Ms.] Seddon then went to the Chinese restaurant alone, while "Donald" went to a nearby intersection to buy more crack-cocaine. "Donald" returned to [Ms.] Seddon and gave her four crack rocks, and they parted ways. [Ms.] Seddon called 9-1-1 from a pay[]phone on the corner of Front and Susquehanna Streets and told the operator the victim's location and that he had been beaten up. []N.T. [Trial,] 5/8/08, [at] 124–25[].

Commonwealth's Brief at 7-8.

> At trial, Ms. Seddon
>
> testified that she had entered a negotiated guilty plea to third-degree murder, robbery, and criminal conspiracy in exchange for the Commonwealth['s] recommending that she be sentenced to ten to twenty years of imprisonment, contingent on her testifying against [Appellant]. [Ms.] Seddon's testimony about the crime was consistent with her third statement to Detectives Glenn and Pitts. While testifying, however, she provided additional details that were not in any of her previous statements, including that when they left the crime scene to get high, [Appellant] threatened to kill her if she told anyone about their crime. [Ms.] Seddon testified that she lied in her 9-1-1 call and first two statements when she identified "two Hispanic males" as the perpetrators and her friend as "Pete Hopkins" because she was "scared and high." She neither mentioned Detective Pitts[,] nor alleged that he had coerced her third statement. []N.T. [Trial] … [at] 73–83, 98, 124–25[].
>
> The Commonwealth also introduced [Appellant's] signed confession into evidence through Detective Glenn's testimony. [**Id.** at] 180–92[].

Commonwealth's Brief at 9.

Based on this evidence, a jury convicted Appellant on May 12, 2008, to third-degree murder, robbery, and criminal conspiracy. He was acquitted of second-degree murder. On July 8, 2008, the court sentenced Appellant to an aggregate term of 18 to 36 years' imprisonment. He filed a timely direct appeal and, after this Court affirmed his judgment of sentence, our Supreme Court denied his subsequent petition for permission to appeal. **See Commonwealth v. Patterson**, 15 A.3d 532 (Pa. Super 2010) (unpublished memorandum), *appeal denied*, 20 A.3d 1211 (Pa. 2011).

Appellant thereafter filed a timely, *pro se* PCRA petition on February 13, 2012. Therein, he claimed, *inter alia*, that he had lied about being involved in the crime "because [he] was highly upset because of [Ms.] S[e]ddon['s] putting [him] in her crime[, when] she knew [Appellant] was not with her." *Pro Se* PCRA Petition Affidavit, 2/13/12, at 1. Appellant claimed that Detective Glenn "made [him] sign the statement" and that "he made [Ms. Seddon] sign the statement[,] as well." ***Id.*** He also attested that he "was told to sign the papers for a deal." ***Id.*** The PCRA court appointed Appellant counsel, who filed a petition to withdraw rather than an amended petition on Appellant's behalf. On August 22, 2014, the PCRA court denied Appellant's petition without a hearing. He did not appeal.

On January 19, 2021, Appellant filed the *pro se* PCRA petition that underlies his present appeal. Therein, Appellant claimed that he had received "information[,] … supplied to [him] by the District Attorney's Office[,]" that "Detective Pitts was under investigation for being engaged in misconduct, coercion, corruption, [making] false claims to authorities, … produc[ing] false evidence, and us[ing] coercive tactics to manipulate cases." *Pro Se* PCRA Petition, 1/19/21, at 4. He claimed that Detective Pitts' misconduct constituted governmental interference in his case, which undermined the truth-determining process, and that his trial counsel acted ineffectively by not calling Detective Pitts at trial "to determine his full level of participation in the interrogation/interview process in [Appellant's] case." ***Id.*** Appellant further stated that Detective Pitts and Detective Glenn questioned both he and Ms.

- 5 -

Seddon "to persuade the answers they wanted out of [them]." *Id.* at 8. He claimed that the detectives "fully told [him] what they knew [his] part was, and how [he] could help himself and them by admitting to doing the things Ms. Seddon said [he] did with her in her [second] or [third] version of the situation." *Id.* Appellant claimed he felt "coerced" into providing the answers the detectives wanted. *Id.* Appellant insisted that he did not realize the seriousness of the detectives' coercion until he learned of Detective Pitts' misconduct in other cases.

On March 31, 2021, the PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss Appellant's petition as being untimely filed. Appellant filed a *pro se* response, stating that he received a notice from the District Attorney's Office regarding Detective Pitts' misconduct, and that he thereafter filed his PCRA petition raising these newly-discovered facts in order to meet the timeliness exception. *See Pro Se* Response to Rule 907 Notice, 4/19/21, at 1 (unnumbered). Notwithstanding Appellant's response, on May 17, 2021, the PCRA court issued an order dismissing his petition. He filed a timely, *pro se* notice of appeal, and he also timely complied with the PCRA court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The court thereafter filed a Rule 1925(a) opinion.

Herein, Appellant states two issues for our review:

1. Did the PCRA [c]ourt err by denying Appellant's [p]etition in light of the [n]ewly[-d]iscovered [e]vidence provided by the District Attorney's Office establishing Detective James Pitt[s'] reputation for habitually coercive conduct towards witnesses during custodial interrogations?

- 6 -

2. Did the PCRA [c]ourt abuse its discretion by failing to weigh the sufficiency of the [n]ewly[-d]iscovered [e]vidence provided by the District Attorney's Office that may have affected the fairness and outcome of … Appellant's trial?

Appellant's Brief at 5.

This Court's standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. ***Commonwealth v. Ragan***, 923 A.2d 1169, 1170 (Pa. 2007). We must begin by addressing the timeliness of Appellant's petition, because the PCRA time limitations implicate our jurisdiction and may not be altered or disregarded in order to address the merits of a petition. ***See Commonwealth v. Bennett***, 930 A.2d 1264, 1267 (Pa. 2007). Under the PCRA, any petition for post-conviction relief, including a second or subsequent one, must be filed within one year of the date the judgment of sentence becomes final, unless one of the following exceptions set forth in 42 Pa.C.S. § 9545(b)(1)(i)-(iii) applies:

**(b) Time for filing petition.--**

(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii). Additionally, at the time Appellant's petition was filed, section 9545(b)(2) required that any petition attempting to invoke one of these exceptions "be filed within one year of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).

Here, Appellant's judgment of sentence became final in 2011 and thus, his petition filed in 2021 is facially untimely. For this Court to have jurisdiction to review the merits thereof, Appellant must prove that he meets one of the exceptions to the timeliness requirements set forth in 42 Pa.C.S. § 9545(b).

Instantly, Appellant argues that he meets the after-discovered facts exception of section 9545(b)(1)(ii) based on his discovery of Detective Pitts' and Detective Glenn's misconduct in other criminal cases. Specifically, in his appellate brief, Appellant states that on November 2, 2020, the Philadelphia District Attorney's Office sent him a letter notifying him that Detective Pitts was "under investigation for various abuses and violations of law that could have had a direct impact on [A]ppellant's case." Appellant's Brief at 12. Appellant claims that, "[s]hortly thereafter, [he] discovered an article implicating … []Detective … Glenn[] as being under investigation for the same unlawful tactics as Detective Pitts," which compelled Appellant to file his present petition on January 19, 2021. *Id.* Appellant contends that he could not have discovered the information about Detectives Pitts' and Glenn's

misconduct earlier with the exercise of due diligence, and that the allegations against these two detectives demonstrate that they coerced both his and Ms. Seddon's inculpatory statements. Appellant stresses that Ms. Seddon changed her version of events several times until she was interviewed by the detectives. He explains:

> Detective … Pitts and Detective … Glenn coordinated to interrogate [A]ppellant and Ms. Seddon, identifying them both as drug addicts, pressured and coerced them to bring the case to a quick end by filling in the blanks and asking the same questions over and over until the desired answers were repeated as proclaimed by the [d]etectives, and thereafter Detective … Glenn reduced those questions and answers to writing in a manner that would seal the fate of [A]ppellant. Furthermore, Detective … Glenn took great care to correct and ensure [A]ppellant repeated back the desired answers, assuring [A]ppellant that this was the only way to help himself. No recordings were made or attempted.

*Id.* at 15. Appellant avers that the misconduct of Detectives Pitts and Glenn in other cases, which he just discovered in November of 2020, supports that the detectives coerced his and Ms. Seddon's inculpatory statements in this case. Therefore, he insists that the PCRA court should have at the very least conducted an evidentiary hearing, if not granted him a new trial.

In rejecting Appellant's claim, the PCRA court concluded that Appellant had failed to prove that he satisfied section 9545(b)(2) because he did not state "when he learned about any proceedings or reputational matters regarding … [D]etective [Pitts]." PCRA Court Opinion (PCO), 7/14/21, at 3.[1]

_____

[1] We recognize that the PCRA court erroneously stated that section 9545(b)(2) required Appellant's claim be raised within 60 days of the date on which it
*(Footnote Continued Next Page)*

The court observed that Appellant's "entire claim to the timeliness exception is that he learned about [Detective] Pitts' alleged involvement and misconduct in his case only when the District Attorney sent [Appellant] information; he does not say, however, when or why this communication occurred." *Id.* at 3-4.

After carefully reviewing Appellant's *pro se* petition, we are compelled to agree with the PCRA court. While Appellant specifically states that he received the District Attorney's letter informing him of Detective Pitts' misconduct on November 20, 2020, and he attaches to his brief a copy of that letter to confirm its date, he did not provide this information or documentation to the PCRA court with his *pro se* petition. Appellant also did not state, or provide any documentation to support, when he learned of the allegations of misconduct against Detective Glenn. Therefore, we must agree with the PCRA court that Appellant failed to demonstrate that he met the one-year requirement of section 9545(b)(2).[2]

_____

could have first been discovered. *Id.* at 3. The language of section 9545(b)(2) was amended, effective December 24, 2018, to require that a petition "be filed within one year of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2). That amendment applies to any claims arising on or after December 24, 2017. Therefore, it clearly encompasses Appellant's present claim.

[2] We note that the Commonwealth concludes that Appellant met the after-discovered facts exception, but that his "substantive claim of after-discovered evidence does not entitle him to relief." Commonwealth's Brief at 16. However, the Commonwealth acknowledges that Appellant "did not attach the [District Attorney's] letter to his petition or include the date on which he
*(Footnote Continued Next Page)*

- 10 -

In any event, even had Appellant met the after-discovered facts exception, we would agree with the Commonwealth that he is not entitled to the relief of a new trial premised on Detective Pitts' misconduct in other cases. As the Commonwealth aptly explains:

> [Appellant] claims that he is entitled to a new trial because after-discovered evidence shows that Detective Pitts coerced co-conspirator [Ms.] Seddon to provide a false statement incriminating [Appellant], which was used against him at trial. Because [Ms.] Seddon did not recant that statement at trial, and because [Appellant] has not alleged to have discovered any new information leading him to believe that [Ms.] Seddon's statement was coerced, his claim is meritless. Moreover, because [Appellant] confessed in a statement secured by a different detective outside of Detective Pitts'[] presence, it is unlikely that evidence of Detective Pitts' alleged misconduct in other cases would have affected the outcome of [Appellant's] trial.
>
> To be eligible for post-conviction relief based on after-discovered evidence, [Appellant] was required to "demonstrate by a preponderance of the evidence" that the evidence: (1) was discovered after he pleaded guilty and could not have been obtained beforehand "through reasonable diligence;" (2) is "not cumulative;" (3) would not be "used solely to impeach credibility;" and (4) "would likely compel a different" result. ***Commonwealth v. Fears***, 250 A.3d 1180, 1191 (Pa. 2021)). "The proposed evidence must be producible and admissible." ***Commonwealth v. Ford***, 141 A.3d 547, 557 (Pa. Super. 2016).

---

received it." ***Id.*** We cannot agree with the Commonwealth that Appellant's "attach[ing] it to his appellate brief" cures his error of not presenting the letter to the PCRA court, or even stating on what date he received it. ***Id.*** It is well-settled that we cannot consider any documents not contained in the certified record. ***See Bennyhoff v. Pappert***, 790 A.2d 313, 318 (Pa. Super. 2001) (stating "[i]t is black letter law in this jurisdiction that an appellate court cannot consider anything which is not part of the record in [the] case"). We also must deem waived any claims that were not first presented to the PCRA court. ***See*** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

In **Commonwealth v. Epps**, 240 A.3d 640 (Pa. Super. 2020), this Court considered a claim similar to that presented by [Appellant] here. The petitioner in Epps raised an after-discovered evidence claim premised on his recent discovery that a detective who did not testify at his trial, but who did interview two testifying witnesses, had "coerce[d] inculpatory statements from witnesses in *other* cases." [**Id.**] … at 653 (emphasis in original). [Epps] supported his claim by citing the first witness's "trial testimony that her initial statement did not mention [him] at all" and that she only identified him after further questioning. **Id.** Conversely, [Epps] did not cite "anything in the record to support his claim of possible police coercion" with regard to the second witness[.] **Id.** at 654. In rejecting the petitioner's claim, this Court found that it lacked any evidentiary basis in the record. **See id.** The first witness's trial testimony established that although she initially lied, "she then wanted to tell the truth and cooperate with police after they obtained her cell phone records showing her communication with [the petitioner]." **Id.** Similarly, the record showed that the second witness "entered an open guilty plea to several charges for his role in [the petitioner's] case and that, as part of his plea agreement, [he] testified in court as a Commonwealth witness." **Id.** Moreover, even assuming that evidence of the detective's misconduct was admissible, this Court held that "it could only be used to impeach the credibility" of the two witnesses and[,] therefore[,] could not "form the basis for an after-discovered evidence claim in this case." **Id.**

Similarly, [Appellant's] claim here lacks support in the record. Like the petitioner in **Epps**, [Appellant] only supports his claim that Detective Pitts coerced [Ms.] Seddon's third, inculpatory statement by citing [Ms.] Seddon's initial failure to identify [Appellant] as a participant in the crime[,] and by citing Detective Pitts'[] allegedly coerced statements from witnesses in *other* cases. [**Epps**,] 240 A.3d at 653; **see** Brief for Appellant[] [at] 22. However, [Ms.] Seddon, like the first witness in **Epps**, explained in her testimony that she initially failed to identify [Appellant] as the true perpetrator because she was "scared and high," and that her third statement was "the truth." []N.T.[ Trial] … [at] 73, 83[]; **see** [**Epps**,] 240 A.3d at 654. Like the second witness in **Epps**, [Ms.] Seddon entered a plea agreement for charges stemming from her participation in [Appellant's] crimes, conditioned on her testifying against [Appellant]. []N.T.[Trial] … [at] 58–59[]; **see** [**Epps**,] 240 A.3d at 654. Moreover, like both witnesses in **Epps**, [Ms.] Seddon testified consistently with her statement to

- 12 -

Detective Pitts, who did not testify at trial. *See Epps*, 240 A.3d at 654; []N.T.[ Trial] … [at] 83). [Appellant] does not allege to have discovered new information related to *this* case suggesting that [Ms.] Seddon's statement to Detective Pitts was coerced. Consequently, even if evidence of Detective Pitts'[] misconduct in other cases were admissible in [Appellant's] trial, it could have only impeached [Ms.] Seddon's credibility and[,] therefore[, it] cannot "form the basis for an after-discovered evidence claim in this case." *Epps*, 240 A.3d at 654.

Furthermore, [Appellant's] conviction did not rely solely on [Ms.] Seddon's testimony. Rather, the Commonwealth also introduced into evidence [Appellant's] own confession, which was secured by a non-suspect detective[3] outside of the presence of Detective Pitts hours *before* Detective Pitts interrogated [Ms.] Seddon. []N.T. [Trial] … [at] 180–82, 198–99[]. Evidence of Detective Pitts'[] misconduct in *other* cases would not have undermined the validity of [Appellant's] confession in *this* case. Consequently, [Appellant] failed to establish that this evidence "would likely compel a different" result. *Fears*, 250 A.3d at 1191. Accordingly, his claim is meritless.

Commonwealth's Brief at 17-20 (emphasis in original). We would agree with the Commonwealth's argument and conclude that Appellant cannot demonstrate that a new trial is warranted based on the after-discovered evidence of Detective Pitts' misconduct in other cases.

The same is true regarding Appellant's allegations of misconduct by Detective Glenn. Appellant claims that "he demonstrated that a miscarriage of justice occurred in his case via an unruly interrogation and forced confession by Detective … Glenn…." Appellant's Brief at 14. He further claims that Detective Glenn "pressured and coerced" him into confessing "by filling in the

---

[3] We disagree with this characterization by the Commonwealth, given that Appellant raised allegations against Detective Glenn in his *pro se* PCRA petition and in his brief on appeal. However, we address why Appellant's allegations against Detective Glenn also would not warrant a new trial, *infra*.

blanks and asking the same questions over and over until the desired answers were repeated…." *Id.* at 15. Appellant stresses that he initially told the detective "that he had nothing to do with the crime," but he ultimately confessed after he was "interrogated for another 30 to 45 minutes and coerced into saying what was suggested by … Detective[] … Glenn." *Id.* at 15-16.

We are unconvinced that the jury would have likely reached a different result had they known about Appellant's allegations of misconduct against Detective Glenn. First, Appellant provides little detail about how Detective Glenn coerced, pressured, and/or forced him to confess, or what misconduct Detective Glenn allegedly committed in other cases that mirrors the detective's improper tactics in Appellant's case. Instead, Appellant mentions only that the detective interrogated him for an extra 30 to 45 minutes after Appellant initially denied involvement in the crime, and that the detective asked him the same questions repeatedly. Neither of these interrogation tactics amounts to misconduct. Appellant also does not explain what, specifically, he said in his statement that was untrue or coerced. Thus, even had Appellant's petition met a timeliness exception, we would conclude that his substantive claims do not warrant relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/18/2022